*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1057**

State of Minnesota,
Respondent,

vs.

Elliott Lamar-Seccer Pierson,
Appellant.

**Filed February 16, 2016
Affirmed
Minge, Judge**⃰**

Hennepin County District Court
File No. 27-CR-14-26101

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellant Public Defender, Frank Richard Gallo, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Kirk, Judge; and Minge,

Judge.

---

⃰ Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MINGE**, Judge

In this appeal from convictions of aggravated robbery, appellant challenges the validity of his *Norgaard* plea. *See State ex rel. Norgaard v. Tahash*, 261 Minn. 106, 110 N.W.2d 867 (1961). Appellant asserts that the plea was not accurately made because he did not acknowledge that a fact-finder would likely find him guilty and asks this court to allow him to withdraw his plea to correct a manifest injustice. Because we conclude there is no manifest injustice, we affirm appellant's convictions.

## FACTS

In September 2014, appellant Elliott Lamar-Seccer Pierson was charged with two counts of first-degree aggravated robbery. The complaint alleged that on September 4, 2014, appellant robbed a gas station in Minneapolis by brandishing a knife and demanding money from two clerks. The clerks reported that the robber took money from the cash registers and placed it in a black backpack. One of the clerks reported that the robber also grabbed "handfuls" of cigars. Police officers arrived at the crime scene, investigated, located appellant "hiding by a nearby garage," and apprehended him. The officers noted that appellant matched the description of the robber provided by the clerks. In searching the area where appellant was hiding, the officers found a black backpack containing cash, cigars, and a knife. Both of the clerks identified appellant as the robber shortly after he was apprehended.

Appellant pleaded guilty to both counts of aggravated robbery in a so-called *Norgaard* plea. Appellant claimed to have been intoxicated at the time the offenses were

committed and that he had a limited memory of events. Appellant's counsel submitted a plea-petition form signed by appellant in support of his waiver of rights. The petition stated, "I am pleading guilty because on 9/4/14, within the City of Minneapolis, Hennepin County, I did the following: took personal property from victim, holding knife & threatening." Appellant completed the petition form so that it contained the following statement: "I (do)(do not) claim that I was so drunk or so under the influence of drugs or medicine that I did not know what I was doing at the time of the crime(s)" and wrote next to it "had been drinking." At the plea hearing, appellant's counsel questioned appellant about his understanding of the petition. Appellant agreed that he had reviewed it with his counsel. Appellant acknowledged that he was waiving his right to a trial in which the state would have to prove him guilty beyond a reasonable doubt.

Appellant's counsel also questioned appellant about the robbery. The record of that questioning includes the following:

> Q: Mr. Pierson, on September 4th of last year, were you in the
> City of Minneapolis?
> A: Yes, sir.
> Q: And had you been drinking and using drugs that day?
> A: Yes, sir.
> Q: Were you in South Minneapolis at some point during the
> day on September [4th?]
> A: Yes, sir.
> Q: Do you remember going into a gas station located around
> 51st and 34th Avenue in South Minneapolis? Do you have a
> vague recollection of that?
> . . . .
> [A]: Vague.
> . . . .
> Q: A vague recollection of that, correct?
> A: Yes.
> Q: Okay. And do you also remember being arrested that day?

3

A: Yes.
Q: But is it correct that you have a very foggy recollection of the events surrounding the, what is alleged in the complaint, specifically, of robbing two victims in that gas station?
A: Yes, sir.
Q: You have reviewed the discovery that has been provided by the County Attorney's Office in connection with your case, is that correct?
A: Yes, sir.
Q: And you and I have talked about the various investigation reports and statements that were made in connection with the investigation of the case, is that correct?
A: Yes, sir.

Next, there was confusing dialogue between appellant and his attorney about the possession of a knife, suggesting that appellant was not challenging the allegation that he possessed and brandished a knife at the gas station and that the knife was found nearby in a black backpack, but that the knife was not on his person at the time of his arrest.

Appellant's counsel then continued questioning as follows:

Q: And you—you are not disputing the accuracy of any of the reports that have been provided to you.
A: I can't because I don't remember, no, sir.
Q: All right. And you do remember that you were—you have a vague recollection of being in a gas station, correct?
A: Yes.
. . . .
Q: And we're not disputing any of the reports that are part of the investigation of the case, correct?
A: No, sir.
Q: And those reports indicate that you went into the gas station and you were holding a knife and you demanded money. We're not disputing that, is that right?
A: Yes, sir, that's right.
Q: That's correct. We're not disputing that.
A: We're not disputing that.
Q: And it goes on that you had the victims, one of the victims open up a cash register from which you took some money, is that correct?

4

A: That's what the report says. I'm not disputing that, sir. No.
Q: And you are not disputing that. And you also took some cigars, according to the reports, is that true?
A: That's what the report says, yes.
Q: All right. And when you were arrested, they found 14 cigars nearby you, is that correct?
A: In the area in a bag with a knife and money or whatever they said, yes.
Q: All right.

The prosecutor then inquired:

[PROSECUTOR]: Mr. Pierson, you agree that Minneapolis is in Hennepin County, correct?
[APPELLANT]: Yes, sir.
[PROSECUTOR]: And . . . what I would like to do is submit the probable cause portion of the complaint along with Mr. Pierson's *Norgaard* plea in support of those pleas. Would he agree to that?
[APPELLANT'S COUNSEL]: We would agree to that, yes.
THE COURT: All right. The complaint—the facts in the complaint will be submitted as part of the record.

Appellant entered a guilty plea with an understanding regarding the sentence. The district court accepted appellant's guilty plea. At his request, appellant was released from custody for eight weeks until sentencing on defined conditions, including that appellant refrain from using drugs and alcohol and remain law abiding. The district court admonished appellant that this release was very unusual, risky for appellant, and against the court's better judgment, and that if the conditions of his release were violated, it would result in a guidelines sentence rather than a more favorable sentencing arrangement. Appellant assured the court that he would observe the conditions. Appellant violated the terms of the release, and the district court imposed a guidelines sentence of 108 months on

5

count one and an additional consecutive sentence of 57 months on count two. Appellant filed a direct appeal arguing that he should be entitled to withdraw his guilty plea.

## D E C I S I O N

The issue in this appeal is whether appellant is entitled to withdraw his guilty plea to correct a manifest injustice. To withdraw a guilty plea after sentencing, a defendant must show withdrawal is necessary to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1; *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A manifest injustice exists if a guilty plea is not constitutionally valid; to be valid the plea must be accurate, voluntary, and intelligent. *Raleigh*, 778 N.W.2d at 94. Whether a guilty plea was valid is a question of law, which we review de novo. *Id.*

Here, appellant argues that his guilty plea was not accurately made because he failed to acknowledge that a fact-finder would likely find him guilty beyond a reasonable doubt.[1] "The main purpose of the accuracy requirement is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). A guilty plea is not accurate if it is not supported by a proper factual basis. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). A factual basis exists if there are "sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted).

---

[1] Appellant did not present this argument to the district court before entry of judgment, but a defendant may "appeal directly from a judgment of conviction and contend that the record made at the time the plea was entered is inadequate." *See Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989).

6

"Ordinarily, an adequate factual basis is 'established by questioning the defendant and asking the defendant to explain in his or her own words the circumstances surrounding the crime.'" *Williams v. State*, 760 N.W.2d 8, 12 (Minn. App. 2009) (quoting *Ecker*, 524 N.W.2d at 716), *review denied* (Minn. Apr. 21, 2009). In two circumstances, however, "a factual basis must be established by other means: when a defendant enters an *Alford/Goulette* plea and when a defendant enters a *Norgaard* plea." *Id.*

This court has previously stated that:

> A defendant enters an *Alford/Goulette* plea if he maintains his innocence but reasonably believes, and the record establishes, the state has sufficient evidence to obtain a conviction. *Ecker*, 524 N.W.2d at 716 (citing *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970)); *see also State v. Goulette*, 258 N.W.2d 758, 760 (Minn. 1977). A defendant enters a *Norgaard* plea if he claims a loss of memory, through amnesia or intoxication, regarding the circumstances of the offense but the record establishes that the defendant is guilty or likely to be convicted of the crime charged.

*State v. Johnson*, 867 N.W.2d 210, 215 (Minn. App. 2015) (quotations and other citations omitted), *review denied* (Minn. Sept. 29, 2015).

"When a defendant enters an *Alford/Goulette* plea or a *Norgaard* plea, it is particularly important that a factual basis for the plea be established . . . because in both cases the plea 'is not supported by the defendant's admission of guilt.'" *Williams*, 760 N.W.2d at 12 (quoting *State v. Theis*, 742 N.W.2d 643, 649 (Minn. 2007)) (citation omitted).

> [T]he Minnesota Supreme Court has not definitively stated what is required, as opposed to recommended, to establish an adequate factual basis for a *Norgaard* plea. . . . In *Ecker*, the supreme court suggested that a factual basis . . . is sufficiently

7

> established when the record clearly shows that in all likelihood the defendant committed the offense and that the defendant pleaded guilty based on the likelihood that a jury would convict. In *Theis*, . . . the supreme court . . . clarified that an adequate factual basis consists of two related components: a strong factual basis and the defendant's acknowledgement that the evidence would be sufficient for a jury to find the defendant guilty beyond a reasonable doubt.

*Id.* at 12-13 (citations omitted). The supreme court specifically stated that "[t]he *best practice* . . . is to have the defendant specifically acknowledge on the record at the plea hearing that the evidence the [s]tate would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty." *Theis*, 742 N.W.2d at 649 (emphasis added).

Appellant pleaded guilty to two counts of first-degree aggravated robbery. First-degree aggravated robbery is established when a perpetrator, "while committing a robbery, is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon." Minn. Stat. § 609.245, subd. 1 (2014). "Dangerous weapon" is defined as "any firearm . . . or any device designed as a weapon and capable of producing death or great bodily harm . . . or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Minn. Stat. § 609.02, subd. 6 (2014). A knife is a dangerous weapon. *See State v. Slaughter*, 691 N.W.2d 70, 75-76 (Minn. 2005) (concluding that knife-like object is a dangerous weapon).

The record establishes that in all likelihood appellant committed aggravated robbery. The complaint, submitted as part of the record, states that appellant demanded

money from two clerks while brandishing a knife. He took money from the cash registers and put it in a black backpack and also grabbed handfuls of cigars. The officers found appellant hiding nearby and also found a black backpack containing money, cigars, and a knife. Appellant matched the description provided by each clerk and each clerk identified appellant as the robber after he was apprehended. Appellant acknowledged on the record that he read the complaint, he reviewed the state's evidence, including reviewing various investigative reports and statements with his counsel, and he did not dispute the state's evidence.

But appellant did not acknowledge on the record that the evidence "would be sufficient for a jury to find him guilty beyond a reasonable doubt." *See Theis*, 742 N.W.2d at 650. Certainly, the standard set forth by the supreme court in *Theis* should be followed by the district courts. Yet, we note that the supreme court has not stated that this acknowledgement is required. *See Williams*, 760 N.W.2d at 12; *cf. Johnson*, 867 N.W.2d at 217 (holding that there is no requirement in a *Norgaard* guilty plea for the district court to make an express finding on the record that there is a strong probability that the defendant would be found guilty of the crime to which he is pleading guilty).

The record of appellant's plea is short. The preprinted plea-petition form is filled out as a straight guilty plea. Although counsel's references to the *Norgaard* plea are clear, the questioning leaves no material factual gap, claims of lack of memory are limited, and there is no denial of or claim that any element of the charges is not proved. Neither at the plea hearing nor at any point in the record of the investigation did appellant claim he was innocent or had no memory of the larger scene. He agreed that he had a "vague

9

recollection" of being at the gas station and a "very foggy recollection" of the robbery, and that he remembered being arrested near a black backpack containing cash, cigars, and a knife. Based on these facts, we conclude that there is uncontradicted evidence of appellant's guilt beyond a reasonable doubt.

Equally important, there is no claim or record indication of any prosecutorial misconduct or lapse in constitutionally required court procedure. Similarly, there was no claim or record of an egregious matter that would support a finding that the plea was not accurate, voluntary, or intelligent. Rather, the record reflects that appellant was granted what to him was an important departure from the handling of criminal convictions: he was released for eight weeks on his personal recognizance pending sentencing. The district court expressed reluctance when granting this release and warned appellant that any understanding regarding the duration of his sentence would not be available if appellant violated the conditions of his release. The district court further warned appellant that his history made observance of the conditions challenging. Appellant persisted in requesting release. While enjoying this benefit of the guilty plea, appellant broke his commitment, then received a guidelines sentence, and now seeks to withdraw his plea.

In sum, we conclude that on this record, the omission of appellant's acknowledgement that a fact-finder would likely find him guilty does not create a manifest injustice.

**Affirmed.**

10