*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0182**

State of Minnesota,
Respondent,

vs.

Ali Dayib Warsame,
Appellant.

**Filed January 16, 2024
Affirmed
Larson, Judge**

Hennepin County District Court
File No. 27-CR-22-6272

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicole Cornale, Assistant County Attorney, Justina Zukauskaite, Certified Student Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Kathryn J. Lockwood, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Slieter, Presiding Judge; Cochran, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

In this direct appeal from final judgment for unlawful possession of ammunition, appellant Ali Dayib Warsame alleges that his *Norgaard* plea was invalid because it was inaccurate. We affirm.

## FACTS

Respondent State of Minnesota charged Warsame with unlawful possession of ammunition pursuant to Minn. Stat. § 624.713, subd. 1(2) (2020). The complaint alleged that on March 29, 2022, police responded to a threats-of-violence report at a group residence. Once inside, the police discovered Warsame sitting on a bed, holding the barrel of an AR-15 rifle in his hands. Around him on the bed were other AR-15 components, including a magazine with live .22-caliber ammunition. According to the complaint, Warsame told officers that he was "building a rifle" and said he would not "go to prison for 60 for the rifle." During a post-*Miranda* statement, Warsame acknowledged that he was prohibited from possessing ammunition or firearms due to a prior conviction for a crime of violence.

Six months later, Warsame reached an agreement with the state to enter a *Norgaard*[1] plea in exchange for the state recommending a 60-month stayed sentence, probation for five years, and 365 days in the Hennepin County Workhouse, which is a downward dispositional departure. *See* Minn. Stat. § 609.11, subd. 5(b) (2020) (requiring an executed sentence of at least 60 months for violations of Minn. Stat. § 624.713, subd. 1(2)).

---

[1] A defendant may enter a *Norgaard* plea when the defendant "claims a loss of memory . . . regarding the circumstances of the offense," but the record "establish[es] that the evidence against the defendant is sufficient to persuade the defendant and his or her counsel that the defendant is guilty or likely to be convicted of the crime charged." *State v. Ecker*, 524 N.W.2d 712, 716-17 (Minn. 1994); *see also State ex rel. Norgaard v. Tahash*, 110 N.W.2d 867, 871-72 (Minn. 1961).

At the plea hearing, Warsame waived his right to trial and presented the district court with a signed Minn. R. Crim. P. 15 plea petition and a "*Norgaard* Addendum."[2] Warsame provided, as relevant here, the following factual basis:

> [DEFENSE COUNSEL]: So what we've also talked about, Mr. Warsame, was that at the time this happened, you were intoxicated; is that correct?
>
> [WARSAME]: Yes.
>
> [DEFENSE COUNSEL]: All right. And because you were intoxicated you can't remember the facts of this case; is that right?
>
> [WARSAME]: That's right.
>
> [DEFENSE COUNSEL]: All right. But in reviewing the police reports with you and reviewing the video, you would agree that if that evidence came in against you, that there is a substantial likelihood that the jury would find you guilty beyond a reasonable doubt?
>
> [WARSAME]: That's right.
>
> [DEFENSE COUNSEL]: Okay. And we went over a waiver that said just essentially that. Right? That you're not claiming you're innocent. You're just saying, "I can't remember the facts."
>
> [WARSAME]: That's right.
>
> [DEFENSE COUNSEL]: All right. And you understand that if the Court accepts this guilty plea, even with the *Norgaard*, you would be convicted as if you were guilty. There is no, kind of, finding you not guilty by doing it this way. Correct?
>
> [WARSAME]: I understand.

[2] Though the record indicates that Warsame and his counsel reviewed the *Norgaard* addendum and submitted it to the district court at the plea hearing, it is not part of the record on appeal.

[DEFENSE COUNSEL]:  Okay. And did you sign the back of that document?

[WARSAME]: I did.

[DEFENSE COUNSEL]: Okay. And on the Plea Petition did you sign on the bottom of the fifth page?

[WARSAME]: I did.

[DEFENSE COUNSEL]: All right. And the video shows that when the police came to talk to you that there was an ammo clip that was sitting on the bed right behind you. Correct?

[WARSAME]: Correct.

[DEFENSE COUNSEL]: And that there was a – three 22 caliber shells in there?

[WARSAME]: Correct.

The state then established the following factual basis:

[STATE]: When the police talked to you, you were staying . . . in Minneapolis?

[WARSAME]: That's right.

[STATE]:  And is that in Hennepin County?

[WARSAME]: That's right.

[STATE]: And when the police came to talk to you, you were in someone else's room. Correct?

[WARSAME]:  Correct.

[STATE]:  But you were in the room, you had gun parts in your hand and the ammo next to you?

[WARSAME]:  Correct.

[STATE]:  And you knew that that was ammo?

4

[WARSAME]:  I didn't know. I mean – I – I've seen the video, so yes, it was ammo.

[STATE]:  Okay. So the video shows the police coming in, sitting on the bed, you're holding the parts. And then when you're talking with the police you make some statements to them about it was a rifle, it was ammo, you were building it, it's not worth doing 60 months over this or what you were doing. So you understand that if the jury saw that evidence there is a likelihood that they would convict you of this offense?

[WARSAME]:  Yes.

The district court accepted Warsame's plea and sentenced him to a stayed 60-month prison term, placed him on probation for three years, and ordered him to serve 365 days in the Hennepin County Workhouse.

Warsame appeals.

## DECISION

Warsame challenges the constitutional validity of his *Norgaard* plea, which we can review for the first time on direct appeal. *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989).  "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  We review whether a defendant entered a constitutionally valid guilty plea de novo. *Id.* at 94.  If a defendant entered an invalid guilty plea, we reverse

and remand to the district court to allow the defendant to withdraw their guilty plea. *State v. Davenport*, 948 N.W.2d 176, 180-81 (Minn. App. 2020).

Warsame challenges only the accuracy of his guilty plea. "To be accurate, a plea must be established on a proper factual basis." *Raleigh*, 778 N.W.2d at 94. Ordinarily, the parties establish a proper factual basis "by questioning the defendant and asking the defendant to explain in his or her own words the circumstances surrounding the crime." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). But for *Norgaard* pleas, the parties must establish the factual basis using other means.

"A plea constitutes a *Norgaard* plea if the defendant asserts an absence of memory on the essential elements of the offense but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction." *Williams v. State*, 760 N.W.2d 8, 12 (Minn. App. 2009), *rev. denied* (Minn. Apr. 21, 2009). Thus, establishing a proper factual basis for a *Norgaard* plea requires "two related components: [1] a strong factual basis and [2] the defendant's acknowledgement that the evidence would be sufficient for a jury to find the defendant guilty beyond a reasonable doubt." *Id.* at 12-13. These two components "provide the court with a basis to independently conclude that there is a *strong* probability that the defendant would be found guilty of the charge to which he pleaded guilty." *Id.* at 13 (quotations omitted). The independent-conclusion requirement means the district court must assure itself that the plea is accurate. *State v. Johnson*, 867 N.W.2d 210, 216 (Minn. App. 2015), *rev. denied* (Minn. Sept. 29, 2015).

Warsame makes three arguments to support his assertion that his guilty plea lacked a strong factual basis: (1) during the plea hearing, he denied knowingly possessing the ammunition; (2) the factual basis was otherwise insufficient to establish knowing possession of the ammunition; and (3) the prosecutor improperly used leading questions to establish the factual basis.[3] We address each argument in turn.

First, Warsame argues that, during his plea colloquy, he denied knowingly possessing the ammunition in the following exchange:

> [STATE]: And you knew that that was ammo?
> [WARSAME]: I didn't know. I mean – I – I've seen the video, so yes, it was ammo.

We disagree with Warsame that this exchange constituted a denial that he knowingly possessed the ammunition.

One could read the testimony "I didn't know" to mean: at the time of the offense, Warsame did not know there was ammunition. But in the context of this guilty plea, the testimony is more aptly understood to mean: at the time of the hearing, Warsame lacked direct cognition that there was ammunition. *See Merriam-Webster's Collegiate Dictionary* 691 (11th ed. 2014) (defining "know" to mean "have direct cognition of"). This understanding is consistent with Warsame's decision to enter a *Norgaard* plea—he did not remember the incident due to intoxication. *See Williams*, 760 N.W.2d at 12 ("A plea constitutes a *Norgaard* plea if the defendant asserts an absence of memory on the essential

---

[3] Warsame does not dispute that he acknowledged the presented evidence would be sufficient for a jury to find him guilty beyond a reasonable doubt.

elements of the offense but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction.").

Moreover, Warsame's meaning becomes clear when read in context with the rest of his testimony. Warsame repeatedly testified that he did not remember the facts due to intoxication, and he made no claim of innocence. Further, after Warsame stated he "didn't know," he clarified by saying "I mean – I – I've seen the video, so yes, it was ammo." Warsame then agreed with the prosecutor's description that the video showed ammunition near him on the bed. And after the prosecutor summarized the video, Warsame agreed that "if the jury saw that evidence there is a likelihood that they would convict [him] of this offense."[4] We therefore conclude Warsame did not deny knowingly possessing the ammunition.[5]

Second, Warsame argues that his *Norgaard* plea was inaccurate because the factual basis was otherwise insufficient to establish that he knowingly possessed the ammunition. We are not persuaded.

---

[4] Warsame also argues that the "I didn't know" statement indicates that he does remember the facts of the offense and, thus, this was not a true *Norgaard* plea. For the reasons articulated above, we disagree. When Warsame's statement is read in context, the record supports that Warsame did not remember the events and intended to enter a *Norgaard* plea. And even if Warsame's statement could be construed as requiring clarification, the state did clarify. Thus, the singular statement that he "didn't know," absent any other support from the record, does not indicate that this was not a *Norgaard* plea.

[5] We note that Warsame did not need to provide direct testimony regarding intent to plead guilty using a *Norgaard* plea, so long as he agreed that the evidence was sufficient to convict him. *See Ecker*, 524 N.W.2d at 717 (providing that a defendant may "plead guilty without expressing the requisite intent so long as he believed the state's evidence was sufficient to convict him").

To obtain a conviction for ineligible possession of ammunition, the state must prove the defendant knowingly possessed the ammunition. Minn. Stat. § 624.713, subd. 1(2); *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017). "Possession may be proved through evidence of actual or constructive possession." *Harris*, 895 N.W.2d at 601. Actual—or physical—possession occurs when the defendant has "direct physical control" of the item. *State v. Barker*, 888 N.W.2d 348, 353 (Minn. App. 2016) (quoting *Jacobson v. Aetna Cas. & Sur. Co*., 46 N.W.2d 868, 871 (Minn. 1951)). Constructive possession applies when the state cannot prove actual or physical possession. *State v. Florine*, 226 N.W.2d 609, 610 (Minn. 1975). The state may prove constructive possession in two ways. *Harris*, 895 N.W.2d at 601. First, the state may show "police found the item in a place under defendant's exclusive control to which other people normally did not have access." *Id.* Second, "if police found the item in a place to which others had access, the State must show that there is a strong probability (inferable from other evidence) that at the time the defendant was consciously or knowingly exercising dominion and control over it." *Id.*

We conclude that the state presented a strong factual basis to support that Warsame constructively possessed the ammunition.[6] During his plea colloquy, Warsame agreed that

---

[6] The parties dispute what evidence we can consider when evaluating the factual basis for Warsame's guilty plea. For *Norgaard* and *Alford* type pleas, we must consider outside evidence such as the complaint when evaluating the factual basis. *See Rosendahl v. State*, 955 N.W.2d 294, 301 (Minn. App. 2021) ("Looking to 'the record' is indeed mandatory in *Alford* or *Norgaard* pleas."). And the evidence must be acknowledged by the defendant as sufficient to convict. *See Williams*, 760 N.W.2d at 12. Here, we note that the state did not enter the video into the record and, had it done so, it would have aided our review in this matter. But because Warsame acknowledged the description of the video in the complaint, we can consider it.

9

the video showed an "ammo clip" sitting on the bed with three .22-caliber shells inside. Warsame agreed that the video showed that he had gun parts in his hands and an "ammo clip" next to him. Warsame concurred that the video showed actual ammunition. And Warsame responded affirmatively when the prosecutor stated: "when you're talking with the police you make some statements to them about it was a rifle, it was ammo, you were building it, it's not worth doing 60 months over this or what you were doing."[7] The only reasonable inference based on these facts is that Warsame constructively possessed the ammunition.

Finally, Warsame argues that he entered an inaccurate guilty plea because the state established the factual basis using leading questions. Warsame is correct that the state established the factual basis for his guilty plea using almost exclusively leading questions. And while we disfavor the use of leading questions to establish the factual basis for a plea, their use is not forbidden. *E.g.*, *Raleigh*, 778 N.W.2d at 94-96 (concluding that the guilty plea was accurate and explaining that "the factual basis for [the] plea [was] sufficient,

---

[7] We note that Warsame correctly states that the prosecutor's description does not match the allegations in the complaint. But, when evaluating the accuracy of a plea, we look to Warsame's testimony about what he saw in the video and agreement that if a jury saw the video, there was a strong likelihood that they would convict him of the offense. *Cf. State v. Theis*, 742 N.W.2d 643, 650 (Minn. 2007) (explaining, in the context of an *Alford* plea, "[t]he allegations of the complaint in this case also do not satisfy . . . the accuracy requirement" because the defendant "did nothing at the plea hearing to affirm that the evidence supporting these allegations would lead a jury to find him guilty"). Here, Warsame agreed on the record that if a jury saw the video, there was a strong likelihood that he would be found guilty.

despite its disfavored format").  The state's use of leading questions—while disfavored—does not render Warsame's plea invalid.

**Affirmed.**